UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAWRENCE P.,[1]

Plaintiff,

**DECISION AND ORDER**

v.

6:25-cv-6164-JJM

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that he was not disabled during the period under review. Before the court are the parties' cross-motions for judgment on the pleadings [5, 7].[2] The parties have consented to my jurisdiction [9]. Having reviewed their submissions [5, 7, 8], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 912-page administrative record [3] is presumed. On July 30, 2018, plaintiff filed an application for disability insurance benefits, alleging an onset date of December 22, 2016. Administrative Record [3] at 90. At that time, he complained of a lower back injury and herniated disc arising from a workplace injury. Id. Plaintiff's claim was initially denied. Id. at 97.

---

1 In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

2 Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

After an initial administrative hearing and unfavorable decision, plaintiff appealed to the Appeals Council, which remanded the case. Id. at 121-22. Another administrative hearing was held, another unfavorable decision was issued, which was this time affirmed by the Appeals Council and appealed to this court. Id. at 1-6, 12-53, 730-32. Upon stipulation of the parties, the case was again remanded, and a new hearing was set. Id. at 730-40.

## A. The Hearing on Remand

On November 7, 2023, Administrative Law Judge ("ALJ") Michael W. Devlin conducted a new hearing. Id. at 691-706. Plaintiff was represented by an attorney. Id. At the hearing, plaintiff testified that he was currently working as a service manager at an apartment community, where he had been working since early 2019. Id. at 696-97.[3] Prior to December 2016, he worked as an auto technician. Id. at 697.

Plaintiff testified that, from late 2016 to early 2019, he was prevented from working by extreme lower back pain and "nerve damage" in his lower legs. Id. at 699. He had trouble coming up and down stairs, and his wife completed most of the household chores. Id. at 700. He suffered from anxiety and weekly panic attacks. Id. at 701. He was unable to sit for prolonged periods. Id. However, he could mostly attend to his personal needs and could drive with some difficulty. Id. at 700. His condition eventually improved over time. Id. at 699.

A vocational expert testified that an individual of plaintiff's age, education, and vocational background who was limited to performing sedentary work with certain exertional, postural, and environmental exceptions would be precluded from performing plaintiff's past relevant work. Id. at 702-03. However, such a person could perform certain jobs that exist in the

---

[3] The period under review is a "closed period" from December 22, 2016 to March 19, 2019. *See* [3] at 666.

national economy. Id. at 703. The additional inclusion of a "sit/stand" limitation would be preclusive of all competitive employment. Id. at 704.

**B. The ALJ's Decision**

On December 7, 2023, ALJ Devlin issued a decision denying plaintiff's claim. Id. at 662-90. He found that plaintiff had the following severe impairments: lumbar degenerative disc disease; lumbar spondylosis and stenosis; and lumbar radiculopathy. Id. at 668. He found that plaintiff's complaints of irritable bowel syndrome, gastric ulcers, alcohol use disorder, and anxiety with panic attacks were non-severe. Id. at 668-69. He further found that plaintiff had no more than mild limitations in all four broad areas of mental functioning. Id. at 669-70.

ALJ Devlin determined that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §404.1567(a) except that he could "occasionally" lift or carry ten pounds, push or pull ten pounds, climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; stand or walk for up to two hours a day; sit for up to six hours a day; and never climb ladders, ropes, or scaffolds, work at unprotected heights or near moving machinery. Id. at 671. He recounted plaintiff's allegations of a lower back injury and herniated disc resulting from a work-related injury in December 2016. Id. at 671-72. He concluded that such impairments could reasonably be expected to cause some of the alleged symptoms, but that plaintiff's allegations as to the intensity, persistence, and limiting effect of the symptoms were not entirely consistent with the evidence of record. Id. at 672.

ALJ Devlin determined that plaintiff was unable to perform any past relevant work, but that, considering plaintiff's age, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. Id. at 682-83. Accordingly, he concluded that plaintiff was not disabled. Id. at 683-84.

**C. Medical Evidence**

On December 22, 2016, plaintiff suffered a workplace injury while working under a car. Id. at 411. He presented to the emergency department a few days later, complaining of lower back pain, and was given a pain reliever and muscle relaxer. Id. at 458-60. He returned to the emergency department on January 1, 2017, indicating lower back pain radiating down his left leg. Id. at 430, 490. X-rays of plaintiff's lumbar spine were unremarkable. Id. at 430. Plaintiff returned to the emergency department again on January 10, 2017, reporting continued lumbar pain but without any radicular pain. Id. at 486.

**1. Mental Health Opinion Evidence**

Anges R. Jonas, Psy.D., performed a consultative psychiatric examination of plaintiff on October 29, 2018. Id. at 551. She noted that plaintiff went to the emergency room once in 2014 for anxiety. Id. Plaintiff was taking Zoloft, but received no other mental health treatment. Id. Plaintiff endorsed inconsistent sleeping and eating, depressive symptomology, and panic attacks. Id. at 551-52. He drank alcohol daily. Id. at 552. His mental status examination results were normal except for assessments of "dysphoric" affect and "poor" judgment. Id. at 553. Plaintiff was resistant to treatment and refused to take certain medications. Id. at 553, 555.

Dr. Jonas opined that plaintiff "might" have mild limitations in using reason and judgment to make work-related decisions and in interacting adequately with supervisors, co-workers, and the public. Id. at 554. Plaintiff would also have a mild limitation in maintaining personal hygiene and appropriate attire. Id. However, he had no limitations in understanding, remembering, or applying simple and/or complex directions and instructions; or in sustaining concentration and performing a task, in sustaining an ordinary routine and regular attendance, in awareness of normal hazards and taking appropriate precautions, and in regulating emotions,

controlling behavior, and maintaining well-being. Id. She recommended that plaintiff engage in psychological therapy and alcohol treatment. Id. at 554-55. ALJ Devlin found Dr. Jonas' opinion to be persuasive, supported by her examination findings, and "predominantly consistent" with the remaining evidence. Id. at 676.

State agency psychological consultant K. Lieber-Diaz, Psy.D. reviewed plaintiff's records and opined that, while plaintiff had medically determinable impairments in the categories of "depressive, bipolar, and related disorders" and "personality and impulse-control disorders", such impairments were not severe and would cause only mild limitations in the four broad areas of mental functioning. Id. at 93-94. ALJ Devlin found Dr. Lieber-Diaz's opinion persuasive, as consistent with and supported by the clinical and longitudinal evidence. Id. at 681.

**2. Medical Opinion Evidence**

On March 19, 2018, treating physiatrist Clifford J. Ameduri, M.D. examined plaintiff and completed a "Doctor's Report" for the New York State Workers' Compensation Board. Id. at 646-52. Under the section entitled "Functional Capabilities and Exertional Abilities", he indicated that plaintiff was limited to sedentary work, with only "occasional" (defined as up to one-third of the time) lifting, carrying, pulling, pushing, sitting, standing, and walking. Id. at 648. He opined that plaintiff could never climb, kneel, bend, stoop, squat, or operate machinery. Id.

ALJ Devlin found Dr. Ameduri's opinion "only partially persuasive" in that his treatment records supported some "positive findings" among otherwise "good examination results", and was consistent with the other evidence to the extent it showed that plaintiff was limited to sedentary work with the exceptions outlined in his RFC determination. Id. at 676. In relevant part, he found that the sitting, bending, stooping, and squatting limitations were

unsupported by record evidence that showed full strength in the upper and lower extremities, imaging showing only mild (if chronic) radiculopathy, and a conservative treatment history including no ongoing injection therapy or surgical intervention. Id. at 677.

Plaintiff's treating nurse practitioner, Lisa Oulette, provided medical assessments dated January 12, 2017, January 30, 2017, and March 7, 2017. Id. at 412, 417, 499. NP Oulette assessed plaintiff with a ligament sprain in the lumbar spine "showing severe exacerbation", but ordering no further workup. Id. She opined that plaintiff would be limited in bending or twisting, and could not lift greater than 10 pounds, pull more than 10 pounds, push more than 10 pounds, squat, or perform prolonged walking or standing. Id. She recommended physical therapy and for plaintiff to use ice and heat as needed for pain. Id. at 412.

ALJ Devlin also found NP Oulette's opinion "partially persuasive", in that it was supported by her treatment records, which contained "a number of good physical examination results, despite some positive findings". Id. at 677. He also found that the opinion "was consistent with the other evidence to the extent it showed that plaintiff was limited to sedentary work with the exceptions outlined in his RFC determination." Id. However, he found that bending/twisting and the prolonged standing/walking limitations were vague and undefined. Id. He further found that the squatting limitation was inconsistent with the evidence of full strength in the lower extremities, only mild radiculopathy, and conservative treatment. Id. at 678.

Consultative medical examiner Rita Figueroa, M.D. examined plaintiff on November 8, 2018. Id. at 556-60. Plaintiff indicated to Dr. Figueroa that he did no household tasks, but could perform self-care activities with limited assistance. Id. at 557. A physical examination revealed some limitations in spinal range of motion. Id. at 558. Dr. Figueroa opined that plaintiff would have "moderate to marked" limitations in prolonged walking and standing,

moderate limitations in prolonged sitting; marked limitations in repetitive bending, lifting, and carrying; marked limitations in kneeling, squatting, crawling, and climbing ladders; and that he should avoid heights. Id. at 560.

ALJ Devlin found Dr. Figueroa's opinion "partially persuasive" as supported by her examination findings and consistent with the other record evidence "to the extent" it showed that plaintiff was capable of performing only sedentary work with certain exceptions. Id. at 679. However, he found that her opinion was definitionally vague as to what constituted "moderate" and "marked" limitations as well as "repetitive" activities. Id. He also noted contemporaneous x-rays that evidenced only mild degenerative changes in the lumbar spine. Id. at 675.

Martin Gingras, M.D. conducted an independent medical examination of plaintiff on June 1, 2017. Id. at 453-56. On clinical examination, Dr. Gingras observed that plaintiff walked slowly, appeared to have difficulty getting in and out of the seated position, and displayed tenderness and reduced range of motion. Id. at 455. He assessed plaintiff at a "disability level" of 75%, was unable to lift over five pounds, and would require "essentially a sedentary position" with the ability to change positions frequently. Id.

ALJ Devlin found Dr. Gringas' opinion to be unpersuasive on the grounds that it was definitionally vague and inconsistent with the other evidence of record, which demonstrated full strength in the upper and lower extremities, only mild radiculopathy, and conservative treatment that did not involve any ambulatory assistance, ongoing injection therapy or surgical intervention. Id. at 680.

Treating physician Amanda Jerome, M.D. issued a cursory opinion on May 11, 2017 that the claimant could not lift over fifteen pounds and could not crawl, climb, squat, or kneel. Id. at 510. ALJ Devlin found the opinion "partially persuasive", again in light of other

evidence of record that demonstrated full strength in the upper and lower extremities, only mild radiculopathy, and conservative treatment that did not involve any ambulatory assistance, ongoing injection therapy or surgical intervention. Id. at 678.

The record also featured medical opinions from independent orthopedic examiner Gregory Chiaramonte, M.D. (Id. at 445-51) and cognitive and behavioral pain management evaluator, Michael J. Kuttner, Ph.D. (Id. at 523-25), who did not assess plaintiff with any meaningful limitations. Id. at 450. Rather, Dr. Chiaramonte found that plaintiff exhibited completely normal orthopedic examination results, no acute distress, and ambulated with a normal gait. Id. at 449. He diagnosed plaintiff with a lumbar sprain that was "resolved". Id. at 449. ALJ Devlin found both opinions unpersuasive. Id. at 680-81.

## DISCUSSION

Plaintiff argues that remand is required because ALJ Devlin: (1) failed to account for his mental limitations in his RFC determination; and (2) erred in evaluating "the more limiting physical opinion evidence of record". Plaintiff's Memorandum of Law [5-1] at 1, 14-23.

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197,

229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B. Did the ALJ properly account for plaintiff's mental limitations?**

Plaintiff argues that ALJ Devlin erred by failing to include mental limitations in his RFC determination, even though the underlying impairments were determined to be non-severe. [5-1] at 14. I disagree.

At step two, the ALJ must determine whether plaintiff has a medically determinable impairment, or combination of impairments, that is "severe". 20 C.F.R. §§404.1520; 416.920(a)(4)(ii). The severity standard "is *de minimis* and is intended only to screen out the very weakest cases". McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "However, despite this lenient standard, the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe'". Ciara B. v. Commissioner of Social Security, 610 F. Supp. 3d 515, 520 (W.D.N.Y. 2022) (citations omitted).

With respect to mental impairments, the ALJ performs a so-called "special technique", assessing a claimant's abilities in the four broad functional areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. §§404.1520a(b)-(c); 416.920a(b)-(c). Social Security Administration regulations provide that

"[i]f we rate the degrees of your limitation as 'none' or 'mild', we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities". §§404.1520a(d)(1); 416.920a(d)(1).

Plaintiff is correct that the ALJ is required to consider all medically determinable impairments, even those that are non-severe, when making their RFC determination. *See* 20 C.F.R. §§404.1545(a)(2); 416.945(a)(2). However, by definition, a non-severe impairment is one that does not "significantly limit your physical or mental ability to do basic work activities". §§404.1522(a); 416.922(a). Thus, it will often be the case that a non-severe impairment does not impact the RFC determination. Indeed, "[w]here an ALJ's assessment of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC". Grace M. v. Commissioner of Social Security, 2022 WL 912946, *3 (W.D.N.Y. 2022); *see also* Christian H. v. Commissioner of Social Security, 2022 WL 3648022, *4 (W.D.N.Y. 2022) ("if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions").

It is the ALJ, not any medical source, who is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2), 416.946(c), 416.927(d)(2); *see* Curry v. Commissioner of Social Security, 855 F. App'x 46, 48 (2d Cir. 2021). The court is obligated to "defer to the [ALJ's] resolution of conflicting evidence" and reject his findings "only if a reasonable factfinder would have to conclude otherwise". Morris v. Berryhill, 721 F. App'x 25, 29 (2d Cir. 2018) (citations omitted).

Plaintiff argues that ALJ Devlin "largely ignored" evidence of plaintiff's mental health limitations. [5-1] at 15. However, he cites no specific examples. On the contrary, ALJ Devlin specifically considered several of plaintiff's alleged mental limitations, including forgetfulness, distractibility, and anxiety, and assessed them as against the evidence of record both at step two and in his discussion of the RFC determination. [3] at 669-70, 676, 681. In the absence of any obvious omissions, I find such analysis sufficient to demonstrate support by substantial evidence.

**C. Did the ALJ err in evaluating the medical opinion evidence?**

Plaintiff also argues that remand is required because ALJ Devlin erred in evaluating "the more limiting physical opinion evidence of record". [5-1] at 16-23. Plaintiff points out that various medical sources assessed plaintiff with greater limitations than those in the RFC, including with respect to lifting, pushing, pulling, reaching, kneeling, bending, twisting, stooping, squatting, standing, sitting, and walking. *See* id. at 17-18. He argues that ALJ Devlin's stated rationale for rejecting those additional limitations was insufficient. Id. Again, I disagree.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [his] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). It is well-established that the ALJ, rather than any medical source, is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2), 416.946(c), 416.927(d)(2); *see* Curry, 855 F. App'x at 48. As such, the RFC need "not perfectly correspond with any of the opinions of medical sources", and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with

the record as a whole". Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022) (*quoting* Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013)).

The ALJ is required to consider all medical opinion evidence and "articulate . . . how persuasive [he] find[s] all of the medical opinions". 20 C.F.R. §404.1520c(b). In so doing, he "must explain how he considered the 'supportability' and 'consistency' factors", and "may—but is not required to" discuss other factors such as the relationship with the claimant, specialization, or familiarity with program requirements. David C. v. Commissioner of Social Security, 2024 WL 376598, *4 (W.D.N.Y. 2024); *see* §404.1520c(b)-(c). "Supportability refers to the relevance of 'the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s)'; consistency refers to how 'consistent a medical opinion(s) . . . is with the evidence from other sources'." Villier on behalf of N.D.D.R. v. Commissioner of Social Security, 2024 WL 2174236, *2 (2d Cir. 2024) (*quoting* 20 C.F.R. §§404.1520c(c)(1), (2); 416.920c(c)(1), (2)). While those factors are technically separate, "[i]n practice, there is generally an overlap". Michael C. v. Commissioner of Social Security, 2022 WL 21852888, *10 (N.D.N.Y. 2022).

Further, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted". Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *7. An unexplained omission of a medically supported limitation may require remand. *See, e.g.*, Jacob K. v. Commissioner of Social Security, 2021 WL 4324379, *4 (W.D.N.Y. 2021). However, "an ALJ is 'entitled to disregard favorable portions of medical opinions,' as long as [he] gives 'logical reasons to support her decision to do so'". Aponte v. Kijakazi, 692 F. Supp. 3d 257, 265-66 (S.D.N.Y. 2023).

Here, ALJ Devlin expressly weighed all the medical opinion evidence of record and discussed the supportability and consistency factors. [3] at 676-81. While he did not adopt any of the medical opinions in full, he found several to be "partially persuasive", adopting many of the opined limitations and giving specific reasons for declining to adopt others. Id. There is, of course, no requirement that the ALJ fully adopt any medical opinion. *See*, *e.g.*, Dinapoli v. Berryhill, 2019 WL 275685, *3 (W.D.N.Y. 2019) ("[t]he fact that the ALJ gave no more than partial weight to the two opinions of record . . . does not create [an] 'evidentiary gap'"). Indeed, the Second Circuit allows an ALJ to reject *all* the medical opinion evidence where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity". Monroe v. Commissioner of Social Security, 676 Fed. App'x 5, 8 (2d Cir. 2017) (*quoting* Tankisi v. Commissioner of Social Security, 521 Fed. App'x 29, 34 (2d Cir. 2013)).

Plaintiff's argument that ALJ Devlin's rationale for rejecting greater limitations opined by the medical sources was "circular" is without merit. *See* [5-1] at 18. Plaintiff contends that ALJ Devlin merely rejected those limitations as inconsistent with his predetermined RFC, which would be improper. *See* id.; Mault v. Colvin, 2017 WL 1100617, *4 (W.D.N.Y. 2017) ("[t]he ALJ cannot support a decision regarding weight with a reference to an already-determined RFC"). However, that argument shortchanges ALJ Devlin's explanation for rejecting those limitations, which made explicit reference to record evidence that showed full strength in plaintiff's upper and lower extremities, imaging showing only mild (if chronic) radiculopathy, and a conservative treatment history including no assistive devices, ongoing injection therapy, or surgical intervention. *See* [3] at 677-78. These are perfectly valid reasons to discount a medically opined limitation. *See*, *e.g.*, Lisa T. v. Commissioner of Social Security, 2023 WL 203363, *7

(W.D.N.Y. 2023) (the ALJ properly discounted a medical opinion based on a "conservative treatment regimen" and "mostly benign objective testing results").

Plaintiff also takes issue with ALJ Devlin's finding certain elements of the medical opinions to be functionally vague, particularly with respect to their usage of undefined terms like "moderate", "marked", "repetitive", and "prolonged". *See* [5-1] at 19; [3] at 677-78. ALJ Devlin is correct that such terms, while commonly used by medical examiners, are ambiguous where, as here, they are left undefined in functional terms. *See* Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013); Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (such terms can be "so vague as to render [them] useless"). Contrary to plaintiff's argument, however, an ALJ is under no obligation to recontact a medical source for clarification when the medical evidence is otherwise complete. *See* Schillo, 31 F.4th at 78 ("Schillo contends that the ALJ was duty bound to obtain a more detailed and clarified statement from Dr. Shukri before rejecting statements due to vague, undefined terms. We disagree.") In any event, ALJ Devlin does not solely rely on any vagueness of those opinions, but instead cited specific objective evidence of record which contradicted them - as discussed above. [3] at 677-78

Finally, plaintiff argues that ALJ Devlin failed to properly consider the consistency of the partially persuasive medical opinions with each other. He points to Social Security regulation 20 C.F.R. §404.1520c(b)(3) regarding "equally persuasive medical opinions", which states that:

> "When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section."

However, this subparagraph does not apply because ALJ Devlin did not find any medical  to be fully supported or consistent with the record. *See* [3] at 677-78; *Cf*. Elizabeth G. v. Commissioner of Social Security, 2022 WL 1689551, *10 (N.D.N.Y. 2022) (finding the regulation applicable where "[t]he ALJ found the opinions [at issue] . . . to be 'well supported' and 'consistent with the objective medical evidence'"). That is, there is no inconsistency left to be resolved by the application of this rule because ALJ Devlin already properly rejected the conflicting elements of those medical opinions by reference to the objective medical evidence of record.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [7] is granted, and plaintiff's motion [5] is denied.

**SO ORDERED**.

Dated: September 29, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge